UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK WILLIAM KRUITHOFF,

        Petitioner,

                                CASE NO. 04-CV-72962-DT
v.                                HONORABLE NANCY G. EDMUNDS

THOMAS BELL,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Mark Kruithoff ("Petitioner"), an inmate currently confined at the Cooper Street Correctional Facility in Jackson, Michigan,[1] has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for animal cruelty which was imposed following a jury trial in the Kent County Circuit Court. Petitioner was sentenced as a second habitual offender to 18 months to six years imprisonment in 2002. In his pleadings, Petitioner challenges the sufficiency of the evidence to support his conviction. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

**I.**    **Facts**

Petitioner's conviction stems from the beating death of a white dog named Bailey ("the dog") at his parents' hog farm in Tyrone Township in Kent County, Michigan on April 18, 2001. The testimony revealed that Petitioner struck the dog on the head several times with a hammer

---

[1] At the time he initiated this action, Petitioner was confined at the Parr Highway Correctional Facility in Adrian, Michigan where Respondent is the warden.

and then threw the dog on his ex-wife's car. Petitioner was charged with animal cruelty and malicious destruction of property in the amount of $200.00 or more but less than $1.000.00.

At trial, Karen Kruithoff ("Karen"), Petitioner's former sister-in-law, testified that she was at the family farm for Easter with her husband, Matt Kruithoff, their four children. Petitioner's ex-wife, Carol Lynn Kruithoff, Petitioner's daughter, and his parents, Wilson and Rosemary Kruithoff, were also present. Petitioner had not been invited and was not present. She testified that Petitioner's parents had two dogs on the farm, one of whom was the victim in this case. Karen testified that she was in the kitchen after dinner when she and other family members saw Petitioner drive up in his truck. He exited the truck and appeared angry as he walked toward the house carrying a hammer. Petitioner approached the dog and beat the dog with the hammer. The dog wailed when it was hit. When Petitioner stopped hitting the dog, he picked the dog up and threw it on his ex-wife's car. He then returned to his truck and sped away, throwing gravel from his wheels and fishtailing as he hit the road. Karen called 911 and reported the incident. Karen also testified that Petitioner and Carol Lynn had a bitter divorce. Karen acknowledged that she does not live on the farm and was not aware of the dog's health problems.

Carol Lynn Kruithoff ("Carol Lynn") testified that she and Petitioner had been married for three years but had divorced and continued to have ongoing problems. She described the incident in a manner similar to Karen Kruithoff. She estimated that Petitioner hit the dog three times before throwing the dog on the hood of her car. She also stated that she had no knowledge of the dog's health problems.

Matt Kruithoff ("Matt") testified that he had been raised on the farm but was not employed in the business. He sated that his parents had the white dog, which he described as old, scruffy, and kind of lame, for approximately one year. He saw Petitioner strike the dog

2

several times with the hammer and throw it on Carol Lynn's car. He removed the dog from the car and said that it was dead at that time. Matt also testified that animals, including hogs and dogs, are often "put down" on a farm. He stated that medicine, a hammer, a gun, lethal injection, and calling a veterinarian are ways to put down an animal. He admitted that he had once put a dog down using a hammer. It was his opinion that using a hammer was a more humane and effective way of putting down a suffering animal than other methods.

Kent County Sheriff Deputy Dale Dekorte testified that he responded to the 911 call on the day of the incident. When he arrived the dog appeared dead, but took what looked like a gasp of breath. Dekorte recalled that Petitioner's father told him that they had been thinking about disposing of the dog by taking it to an animal shelter or the Humane Society. Dekorte left the residence without making an arrest.

Dr. Cheryl Ann Beatty, a self-employed veterinarian, testified that she examined x-rays of the dog and said that the dog's skull fractures were consistent with multiple blows. It was her opinion that the dog did not die quickly and the death was not humane. She admitted that she did not personally examine the dog's body.

Petitioner did not testify at trial, but presented witnesses on his behalf. His mother, Rosemary Kruithoff ("Rosemary"), testified that the white dog had hip problems which made walking difficult and created a danger when the dog crossed the road near their home. She also said that the dog got lost in the orchards and would lie down in the middle of the road. She recalled discussing putting the dog down with family members approximately two weeks before the incident. Rosemary observed Petitioner strike the dog with a hammer and put the dog on Carol Lynn's car before driving away. She believed the dog was dead at that time and that the dog may have expelled air from its lungs when the deputy was present. She stated that they did

3

not call a veterinarian when an animal had to be put down because they had a large number of animals and doing so would be too expensive. She also stated that using a hammer to put a dog down was appropriate.

Petitioner's father, Wilson Kruithoff ("Wilson"), testified that he had been in the hog farm business for 40 years and that Petitioner worked for him on the farm. He stated that the two most common ways of putting down an animal are to shoot it or strike it with a hammer, which is called tonking. He testified that he has put down hogs and at least three dogs using this method, and that animals die easily from blows to the head. Wilson further testified that he and Petitioner and another of his sons had previously discussed doing something with the dog, but had procrastinated. He said that they decided that Petitioner would do it any way he saw fit. Wilson saw Petitioner strike the dog, which he described as old and arthritic. He confirmed that the dog was dead when Petitioner put it on Carol Lynn's car. He observed the dog take a breath, but said that this was normal after an animal had been killed.

Dr. Laurence Allaben, a veterinarian at the Sparta Animal Clinic, testified that he performed a necropsy on the dog. He testified that the dog was approximately 13 years old and that the blows to the center of the dog's cranium caused death. He explained that a dead animal could appear to breathe as a reflex action. He further testified that animals are euthanized because of physical infirmities such as arthritis. He also opined that killing a dog by blows to the head is humane.

At the close of trial, the jury found Petitioner guilty of animal cruelty but acquitted him on the malicious destruction of property charge. The trial court subsequently sentenced him as a second habitual offender to 18 months to six years imprisonment.

**II.     Procedural History**

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the same claim contained in his habeas petition, as well as sentencing issues. The court affirmed his conviction and sentence. *People v. Kruithoff*, No. 242739, 2003 WL 22961698 (Mich. Ct. App. Dec. 16, 2003) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Kruithoff*, 469 Mich. 1028, 679 N.W.2d 62 (2004).

Petitioner thereafter filed the present petition for writ of habeas corpus asserting that the prosecution presented insufficient evidence to support his animal cruelty conviction. Respondent has filed an answer to the petition contending that it should be denied for lack of merit. Petitioner has filed a reply to that answer.

**III.    Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

5

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the

6

reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

Petitioner sole claim that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his animal cruelty conviction. Respondent contends that this claim lacks merit and does not warrant habeas relief.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a conviction for animal cruelty requires proof that the defendant (1) willfully, maliciously and without just cause or excuse (2) killed an animal. *See* Mich. Comp. L. § 750.50b(2). Circumstantial evidence and reasonable inferences drawn therefrom

7

may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's conviction. The court stated:

> '[W]hen reviewing sufficiency of the evidence claims, courts should view all the evidence--whether direct or circumstantial--in a light most favorable to the prosecution to determine whether the prosecution sustained its burden. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.' *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Additionally, this Court reviews de novo questions of statutory interpretation. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).
>
> To sustain a conviction for this offense, the prosecution must prove that defendant (1) willfully, maliciously and without just cause or excuse (2) killed an animal. MCL 750.50b(2). There is no dispute that defendant willfully killed the dog. The only question in this case is whether the killing was malicious and without just cause or excuse. Defendant argues that no evidence was presented to show that defendant acted with malice towards the dog or that he did not act with just cause, i.e., was carrying out the family's decision to put the dog down.
>
> Defendant contends that "maliciously" killing means that defendant had to demonstrate ill will towards the dog. The statute does not provide a definition of malice, nor was the jury provided with one. But the word has been defined in murder cases. The elements of murder, death of a human being, include a killing with malice and without justification or excuse. *People v Mendoza*, 468 Mich 527, 534-535; 664 NW2d 685 (2003). Because the elements of the murder are analogous to the offense in this case, we find instructive case law defining malice in the context of a homicide. 'Malice' is defined as either 'the intent to kill at the time the act is committed' or 'the absence of mitigating circumstances.' *Mendoza, supra* at 539-540 (emphasis in original). There need be no showing of ill will or hatred. Malice can be inferred from the fact that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v Nowak*, 462 Mich 392, 401; 614 NW2d 78 (2000) (citations omitted). In this case, the parties do not dispute that defendant intentionally killed the dog. The prosecution did not need to prove that defendant did so with animus. The allegation that defendant only killed the dog because it needed to be put down relates not to malice, but to whether the killing was with or without just cause or excuse.

8

> With regard to the element of just cause or excuse, defendant's father and mother did testify that the dog was going to be put down. Defendant contends that this was a sufficient reason to excuse the killing and that the other circumstances surrounding the killing are irrelevant. We simply cannot agree. To adopt defendant's interpretation would mean that as long as there was a legitimate reason to kill the family pet, the act could be committed in any manner. Taken to the extreme, killing an animal by drawing and quartering would be permissible if the animal was in an advanced state of failing health or a danger to others. However, such an interpretation would negate the statute's purpose; namely, to ensure that animals are treated humanely. *See* MCL 750.49 *et seq*. To this extent, then, the manner in which the animal is killed must be considered because statutes should be construed reasonably, keeping in mind the purpose of the act. *People v Spann*, 250 Mich App 527, 530; NW2d (2001). We must look to 'the object of the statute, the harm which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose.' *People v Russo*, 439 Mich 584, 595; 497 NW2d 698 (1992), *quoting In re Forfeiture of $5,264*, 432 Mich 242, 248; 439 NW2d 246 (1989).
>
> Here, most of the witnesses testified that defendant, who had been making feed at the farm, was angry when he arrived at his parent's house. After striking the dog several times in full view of the house occupants, defendant put the dog on the hood of his ex-wife's car. Evidence established that he had had a bitter divorce. Defendant's sister-in-law and father testified that defendant spun gravel as he left the scene in his truck. Defendant then returned to the farm where his brother found him banging on the feed bins with the hammer, as is sometimes necessary to do.
>
> While some witnesses testified that there had been discussion about putting the dog down, the jury was free to reject this explanation. Also, there was conflicting evidence as to the humaneness of "tonking" a dog, particularly in this case where the prosecution's expert testified that the dog did not die quickly. Viewing this evidence in the light most favorable to the prosecution, even assuming the dog was going to be destroyed anyway, a jury could find beyond a reasonable doubt that defendant killed the dog at that time, at that place, and in the manner he did simply to release his anger at his ex-wife and that this did not constitute 'just cause' for the manner in which the killing occurred. Therefore, we conclude that there was sufficient evidence to support defendant's conviction.

*Kruithoff*, 2003 WL 22961698 at *1-2.

Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of *Jackson* or of the facts. As noted by the Michigan Court of Appeals, the verdict was supported by the testimony

9

that Petitioner was angry when he approached the dog, struck it several times on the head with a hammer, and then threw it on his ex-wife's car before speeding away in his truck. There was also testimony that such a method of killing the dog was not humane. Given such evidence, a rational factfinder could reasonably conclude that Petitioner committed the crime, and that he acted with sufficient intent and without just cause or excuse.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of animal cruelty beyond a reasonable doubt was reasonable.

Furthermore, to the extent that Petitioner challenges the Michigan Court of Appeals' construction and interpretation of the animal cruelty statute and the elements of the crime, he is not entitled to habeas relief . State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). State law determines the parameters of a state criminal offense and its elements and a federal court may not reinterpret state law on federal habeas review. *Tillman v. Cook*, 215 F.3d 1116, 1131-32 (10th Cir. 2000) (internal citations omitted). A federal habeas court must give deference to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). This Court must

...

therefore defer to the Michigan Court of Appeals' interpretation of the statute and construction of the elements of the crime and cannot grant habeas relief based upon such challenges. Habeas relief is not warranted on Petitioner's insufficient evidence claim.

## V.  Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claim presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 12, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

11